# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>v.<br><br>CARLOS PEREZ ALVARADO,<br><br>Defendant/Petitioner. | Case No. 16-cr-2770-BAS-1<br>Case No. 17-cv-2307-BAS<br><br>**ORDER DENYING PETITIONER'S MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255**<br><br>**[ECF No. 24 (in 16-cr-2870-BAS); ECF No. 1 (in 17-cv-2307-BAS)]** |

Petitioner Carlos Perez Alvarado has filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, claiming he received ineffective assistance of counsel and that his conviction and sentence violated due process. (ECF No. 24.)[1] For the reasons stated below, the Court **DENIES** Petitioner's Motion. (ECF No. 24 (in 16-cr-2770-BAS); ECF No. 1 (in 17-cv-2307-BAS).)

---

[1] Because Mr. Perez-Alvarado's "package disposition" included several different cases, the relevant documents are in various case files. Case No. 16-cr-940-BAS has the documents, including the Presentence Report and Sentencing documents, pertaining to the conviction pursuant to Title 8, U.S.C. § 1326. This case file also includes the plea colloquy for the global disposition. (ECF No. 42) ("Plea

– 1 –

Petitioner was initially charged in the Southern District of California with being found in the United States after deportation in violation of Title 8, U.S.C. § 1326. (Case No. 16-cr-940-BAS.) At the time of the arrest, the parties learned Petitioner had another indictment pending against him in the Central District of California for conspiracy to distribute heroin. (Case No. 14-cr-555 FMO (ultimately transferred to the Southern District of California as case no. 16-cr-2770-BAS).) In addition, Petitioner was on supervised release in the Central District of California from a prior conviction for being illegally in the United States after deportation, and thus faced a revocation of supervised release. (Case Nos. 11-cr-664 GAF, 17-cr-7017-BAS).

Petitioner's counsel, Mark Adams,[2] negotiated a global settlement with the Government in which the Government agreed: (1) to recommend (-3) for acceptance of responsibility, (-4) for "fast track" and the low end of the guideline range for the current section 1326 case (Plea Agreement § XA); (2) to recommend ninety-two months custody for the heroin case (Plea Agreement § XF2); and (3) to recommend that Petitioner's sentence in these two cases, as well as the sentence for the supervised release violation, run concurrently. (Plea Agreement § XA, F3.) The plea agreement specifically noted that if Petitioner was determined to be a career offender pursuant to USSG § 4B1.1(a), his base offense level would be calculated based on that section. (Plea Agreement § XA.)

---

Colloquy"). Case No. 16-cr-2770-BAS has the documents, including the Presentence Report and Sentencing documents, pertaining to the heroin case transferred from the Central District of California. Both files include a transcript of the combined sentencing hearing (ECF No. 43 (in 16-cr-940-BAS); ECF No. 27 (in 16-cr-2880-BAS)) ("Sentencing Hearing") and a copy of the global written plea agreement (ECF No. 27 (in 16-cr-940-BAS); ECF No. 7 (in 16-cr-2770-BAS)) ("Plea Agreement"). Case No. 17-cr-7017-BAS has the documents pertaining to Petitioner's violation of supervised release transferred from the Central District of California. Petitioner's Motion to Vacate Pursuant to 28 U.S.C. § 2255 was filed in case no. 16-cr-2770-BAS and 17-cv-2307-BAS. Unless otherwise noted, ECF cites reference case no. 16-cr-2770-BAS.

[2] Mark Adams was Petitioner's third attorney after two prior *Marsden* hearings resulted in Gerald McFadden and Casey Donovan being relieved and new counsel appointed. (ECF Nos. 16, 22 (in 16-cr-940-BAS).)

At his Plea colloquy, Petitioner was informed that he was facing a maximum of twenty years in custody for the illegal reentry conviction and thirty years in custody for the heroin conspiracy conviction. (Plea Colloquy at 9:1-10.) He agreed that he had discussed the Guidelines with his attorney; he understood the Guidelines were only advisory, not mandatory, and the Court was free to impose a sentence above the guideline range up to the statutory maximum, and that the sentence could not be determined until the Presentence Report was prepared. (Plea Agreement § VII; Plea Colloquy at 10:17-12:6.) Petitioner told the Court that he was satisfied with the representation of his lawyer. (Plea Colloquy at 5:3-5.)

Finally, in the written plea agreement, "[i]n exchange for the Government's concessions in th[e] plea agreement, [Petitioner] waive[d] to the full extent of the law, any right to appeal or to collaterally attack the convictions . . . except a post-conviction collateral attack based on a claim of ineffective assistance of counsel. [Petitioner] also waive[d] to the full extent of the law, any right to appeal or collaterally attack the sentence imposed." (Plea Agreement § XI.) During the plea colloquy, the Court specifically asked Petitioner about this provision: "it also looks like if I do follow the plea agreement, you've agreed to waive your appeal and not appeal any conviction or sentence or collaterally attack any conviction or sentence in either this case of the Los Angeles case, is that your understanding?" to which Petitioner replied, "Yes." (Plea Colloquy at 6:10-15.)

In the Presentence Report for the heroin case, Probation noted that Petitioner was a "career offender" pursuant to section 4B1.1(a) of the Sentencing Guidelines. This calculation was based on the fact that Petitioner was over the age of eighteen years, his heroin distribution offense was a felony controlled substance offense, and Petitioner had prior convictions for possession of a controlled substance for sale in 2007 and assault with a deadly weapon in 2000. (PSR, ECF No. 10, ¶ 31.) The 2007 conviction was not Petitioner's only felony drug trafficking conviction. He also had a 2012 conviction for conspiracy to transport cocaine for which he received four

years in prison and conviction from 1993 for conspiracy to commit narcotics trafficking (case no. BA087679). (*Id.* ¶ 42.) This latter conviction was noted in the PSR, but no points were added to Petitioner's criminal history category because it was too old to score. (*Id.*) Petitioner also had another immigration conviction for Title 8, U.S.C., § 1326 for which he received thirty-seven months in prison in 2011. (*Id.* ¶ 45.) Thus, Petitioner's criminal history category was a VI. (*Id.* ¶ 49.) The Probation Department calculated Petitioner's guideline range for the heroin conspiracy as 188-235 months and recommended the Court impose a sentence of 188 months. (*Id.* ¶¶ 121, 122.)

At the Sentencing Hearing, the Government agreed with the Probation Department's calculations that the guidelines were 188-235 months, but, in keeping with the plea agreement, recommended a downward variance to 92 months. (Sentencing Hearing at 5:13- 6:2.) Although the Government referenced Petitioner's involvement in wiretap intercepts that "indicate the serious high level involvement in an international drug trafficking conspiracy," ultimately the Government recommended the downward variance "given the defendant's age [sixty-five years], medical condition and his involvement in this conspiracy dating back about five or six years." (*Id.* at 5:17-18, 22-23.) The Government noted that the Court could impose each sentence consecutively resulting in a seventeen-year sentence, but urged the Court to impose the three sentences concurrently. (*Id.* at 11:24-12:5.)

During allocution, Petitioner claimed he had "never found effective help in [his] defense" from his multiple attorneys. (Sentencing Hearing at 10:1-9.) Thus, in an abundance of caution, the Court cleared the courtroom and held another *Marsden* hearing. Ultimately, the Court denied any request for a new attorney and resumed the sentencing hearing.

The Court ultimately agreed to follow the Government's recommendation and imposed a ninety-two-month sentence in the heroin case. (ECF No. 16.) The Court noted that if the Government had not made the recommendation, it would not have

departed downward and would have just imposed the low-end of the guideline range or 188 months. (Sentencing Hearing at 12:15-16.) The Court based its decision largely on Mr. Perez-Alvarado's multiple drug convictions. The Court then imposed the low end of the guideline range, or 41 months in custody for the 1326 conviction giving Petitioner credit both for acceptance of responsibility and for early disposition or "fast track" (ECF No. 36 (in 16-cr-940-BAS)), and twelve months on the supervised release violation (ECF No. 11 (in 17-cr-7017-BAS)). The Court imposed both of these sentences concurrent to the ninety-two -months on the heroin case. (Sentencing Hearing at 14:13-14, 21-22.)

## II. ANALYSIS

### A. Ineffective Assistance of Counsel

"[A] defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was ineffective." *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985)). Even in a claim of ineffective assistance of counsel in a guilty plea, Petitioner must meet the *Strickland* test, that is, he must show, first "that counsel's assistance was not within the range of competence demanded of counsel in criminal cases" and, second, that he suffered actual prejudice as a result of this incompetence. *See Lambert*, 474 U.S. at 979-80; *Hill*, 474 U.S. at 57-58.

"A deficient performance is one in which counsel made errors so serious that []he was not functioning as the counsel guaranteed by the Sixth Amendment." *Iaea v. Sunn*, 800 F.2d 861, 864 (9th Cir. 1986) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1987). The Court should not view counsel's actions through "the distorting

lens of hindsight." *Hendricks v. Calderon*, 70 F.3d 1032, 1036 (9th Cir. 1995) (quoting *Deutscher v. Whitley*, 884 F.2d 1152, 1159 (9th Cir. 1989), vacated on other grounds by *Angelone v. Deutscher*, 500 U.S. 901 (1991)).

In order to satisfy the second "prejudice" prong in a guilty plea case, "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Petitioner argues that his convictions and sentence should be set aside because his counsel was ineffective in representing him. Specifically, Petitioner argues that:

> I was tricked into signing a deal during the plea negotiations; my counsel said that the fast track was going to be taken away; and that the prior-22 year old-conviction of possession for sale (BA 087679) was not going to be used. However, the fast track was used and I was given 3 points for the 22 year old conviction for possession for sale—after the deal was made and after I signed the plea agreement.

(ECF No. 24, Ground One.)

The Court is uncertain what errors Petitioner is claiming his attorney made. First, he argues that "fast track was used," apparently under the impression that "fast track" was detrimental to him at sentencing. First of all, "fast track" refers to a downward adjustment in a base offense level for a defendant who enters into an early disposition with the government. It is a favorable, not a detrimental, adjustment for a defendant. In this case, in his original section 1326 case, Petitioner and his attorney did bargain for and get a "fast track" adjustment. Thus, Petitioner got the benefit of this recommendation. In the heroin case, there was no recommendation for a "fast track" departure in either the plea agreement or at sentencing, but any such departure was ultimately moot because the government recommended and the Court agreed to a large downward variance below the recommended guideline range. Thus, "fast track" played no role in Petitioner's ultimate sentence in the heroin case.

Second, Petitioner argues that he was given three points for a twenty-two-year old conviction in case no. BA 087679. He was not. Although the Probation Department mentions this old conviction, the Probation Department notes that it is too old to be scored, and thus, no points were added to Petitioner's criminal history for this conviction.

It defies credulity to believe that Petitioner was tricked into signing the plea deal by any misrepresentations in the agreement. The agreement he signed and adopted in Court specifically called for the Government to recommend a ninety-two-month sentence. The Government did so, and the Court followed the recommendation. Hence, Petitioner knew exactly how much time would be recommended at the time he pled guilty.

Petitioner fails to meet the first prong under *Strickland* in that he fails to explain how his attorney's assistance was below the range of competence demanded by an attorney in a criminal case.

### B. Due Process

Petitioner also argues that his convictions and sentences should be vacated because they violated due process. Specifically, Petitioner argues that he did not receive leniency for: (1) taking responsibility, (2) not being in a leadership role, and (3) signing a plea. Petitioner claims that "if I'd known I would have gotten that much time I'd have taken it to trial and fought the fast track and the 22 year old prior conviction." (ECF No. 24, Ground Two.)

First, as noted above, neither fast track nor the twenty-two-year old prior conviction played any role in Petitioner's sentence in the heroin case.

Second, as part of his plea agreement, Petitioner waived his right to appeal or collaterally attack his sentence. (Plea Agreement § XI, Plea Colloquy at 6:10-15); *see United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990) (waiver of a right to appeal does not violate due process); *United States v. Schuman*, 127 F.3d

– 7 –

16cr2770
17cv2307

815, 817 (9th Cir. 1997) ("[P]lea agreements are contractual in nature and are measured by contract law standards.") (quotation omitted).

Specifically, in the written plea agreement Petitioner waived "to the full extent of the law, any right to appeal or to collaterally attack the convictions . . . except a post-conviction collateral attack based on a claim of ineffective assistance of counsel." (Plea Agreement § XI.) And Petitioner agreed to waive "to the full extent of the law, any right to appeal or collaterally attack the sentence imposed." (*Id.*) Furthermore, Petitioner confirmed this agreement with the Court during the plea colloquy. (Plea Colloquy at 6:10-15.) Therefore, to the extent Petitioner is now arguing that he was improperly sentenced or did not get sufficient credit for pleading guilty, the claim is waived.

Finally, Petitioner's claim is flatly contradicted by the record. He entered into a written plea agreement where the Government agreed to recommend a sentence of ninety-two months. The Government agreed to recommend that sentences in two other cases run concurrently with this ninety-two month sentence. The Government followed this agreement and made this recommendation at the sentencing. The Court followed the Government's recommendation, although the Court made it clear that it would have sentenced Petitioner to a much higher sentence if it had not been for Petitioner's plea agreement with the Government. Therefore, it is clear that: (1) Petitioner did get leniency for his plea of guilty; and (2) Petitioner knew exactly how much time was going to be recommended by the Government, and cannot have been surprised by the Court's imposition of sentence following this recommendation.

Hence, Petitioner's due process arguments must also fail.

## III. CONCLUSION

For the reasons stated above, Petitioner's Motion to Vacate his Conviction and Sentence is **DENIED.** (ECF No. 24 (in 16-cr-2870-BAS); ECF No. 1 (in 17-cv-2307-BAS).) The Clerk of the Court is directed to close case no. 17-cv-

2307-BAS. Because reasonable jurists would not find the Court's assessment of the claims debatable or wrong, the Court **DECLINES** to issue Defendant a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED.**

DATED: June 7, 2018

Hon. Cynthia Bashant
United States District Judge